UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:17-CR-37-TAV-DCP-4 |
| TRAVIS BOYD, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for compassionate release [Doc. 640] and supplement [Doc. 667], both of which were filed by defense counsel. Defense counsel also filed a memorandum in support [Doc. 641]. Defendant, who is now proceeding pro se, has filed a supplement [Doc. 681]. The United States has filed responses in opposition to the various filings [Doc. 644, 689, 720]. Federal Defender Services of East Tennessee has filed a notice pursuant to Standing Order 21-09 indicating that it will not be filing a supplement to defendant's motion [Doc. 719]. The Court allowed defendant until and including September 10, 2021, to file any additional pro se supplements to his request for compassionate release, but no additional supplements on that issue have been filed [Doc. 710, 714]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motions will be **DENIED**.

### I. Background

On January 4, 2018, defendant pleaded guilty to the lesser included offense of conspiracy to distribute and possess with intent to distribute cocaine in violation of

21 U.S.C. §§ 846, 841(a)(1), and 831(b)(1)(C) [Docs. 174, 231]. Defendant was sentenced to 108 months' imprisonment, to be followed by three (3) years of supervised release [Doc. 466].

Defendant is housed at FCI Edgefield, which currently has two (2) active cases of COVID-19 amongst the inmates, three (3) active cases amongst the staff, and 192 staff and 1,092 inmates have been vaccinated against COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited September 28, 2021). Defendant is forty (40) years old and medical records establish that he has been diagnosed with, among other ailments, obesity, hypertension, a heart murmur, congenital heart disease, and other related heart issues [Docs. 641-2, 648, 673]. Defendant contracted COVID-19 in July 2020, but has since recovered [Doc. 648, p. 9]. On April 6, 2021, defendant received his second dose of the Pfizer COVID-19 vaccine [Doc. 689-1]. Defendant is scheduled for release on January 7, 2025. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited September 28, 2021).

## II.     Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A)

only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*.

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)]

3

> instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, as no policy statement applies to defendant-filed motions for compassionate release, the second requirement plays no role. *Id.*

**III. Analysis**

    **A. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion**

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

4

The government concedes that the exhaustion requirement has been met in this case [Doc. 644]. Thus, the Court may consider the merits of defendant's request.

### B. § 3553(a) factors

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 F.3d at 519. In this instance, the § 3553(a) factors weigh against compassionate release, so the Court need not address whether defendant has satisfied the extraordinary and compelling reasons prong of the analysis. "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. The plea agreement described the relevant facts as follows:

5

> Beginning in 2015, the defendant entered into a cocaine distribution conspiracy, which existed in the Eastern District of Tennessee, and elsewhere.
>
> The defendant purchased one to two ounces of powder cocaine per week for resale for a year and a half from co-defendant Devane Robinson. In total, the defendant purchased approximately 1½ kilograms of powder cocaine from co-defendant Robinson.
>
> On one occasion during the conspiracy co-defendant Robinson gave the defendant and co-defendant Elijah Whitehead ½ kilogram of cocaine to split between them.
>
> Based on his personal involvement and role in this conspiracy, the defendant agrees to be held responsible for a base offense level of 24.

[Doc. 174, ¶ 3].

The Court finds that defendant's offense was a serious drug trafficking offense. The Court finds that the severity of defendant's offense emphasizes the need for adequate deterrence, to promote just punishment, and to protect the public from future offenses by the defendant. Nor was this defendant's first conviction. Defendant's adult criminal history includes convictions for aggravated burglary, possession of a weapon, various traffic offenses, criminal trespass, possession of drug paraphernalia, shoplifting, attempted weapons possession, reckless endangerment, theft, robbery, aggravated assault, possession with intent to sell cocaine, and sale of cocaine [Doc. 283, ¶¶ 40-55]. Defendant's criminal history resulted in him being classified as a career offender [*Id.*, ¶ 59]. In addition, defendant has a history of violating probation, including committing the instant offense while on probation [*Id.*, ¶¶ 40, 43, 44, 46-51, 57]. The Court finds that defendant's history of violating probation calls into question his respect for the law and whether he would

abide by his conditions of supervised release in this case if his motion for compassionate release were granted.

Defendant argues that several of his convictions arose from crimes committed many years ago, when he was a young adult, and contends that he is now a changed man. However, defendant committed a cocaine related drug trafficking offense in 2011, when he was thirty years of age, and then, while on probation from that offense, committed the instant cocaine trafficking offense which began in 2015, only four years later, and which lasted approximately two years, resulting in the instant conviction at the age of thirty-seven [*Id*., ¶¶ 3, 54]. Thus, while much of defendant's criminal history is older, defendant's criminal offenses have evolved over time to his most recent drug trafficking offenses, which does not comport with defendant's argument regarding the age of his previous criminal offenses.

The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). Further, the Court has considered the kinds of sentences available, the guideline sentencing range, and the need to avoid unwarranted disparities. *Id*.

As the Court noted above, defendant was sentenced to a total term of imprisonment of 108 months [Doc. 466], and he is due to be released January 7, 2025, approximately

7

39 months from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this instance, including good time credit, defendant has served approximately sixty percent of his sentence, leaving a significant portion of his sentence yet to be served. The Court finds that the length of time left on defendant's sentence is another factor which weighs against compassionate release.

The Court is aware of defendant's medical condition and past medical history, and the risk that the ongoing pandemic poses to defendant and to others. That risk is somewhat lessened by the fact that the Bureau of Prisons has begun vaccinating inmates, including the defendant, against COVID-19, and, as the Court noted above, 1,092 inmates at the facility where defendant is housed have already been vaccinated. The Court in no way diminishes the risk COVID-19 continues to present, but the Court must still balance the § 3553(a) factors against all other relevant evidence.

Furthermore, the Court notes that a September 17, 2020, medical record relating to defendant's heart condition provides a doctor's recommendation that defendant's "problem will need to be followed and the patient should have yearly cardiovascular visits in addition to echocardiogram done at least once a year basis. He does not appear to be having symptoms at this time" [Doc. 673, p. 15]. The Court does not doubt that defendant suffers

8

from a serious heart condition, but the medical records before the Court do not appear to support defendant's arguments that he needs compassionate release because of a condition which requires immediate surgery.

The Court also acknowledges defendant's concerns for his family, his desire to be reunited with them, the letters of support submitted by his family [Doc. 667-2, 667-3], and his rehabilitation efforts while in prison. While the Court recognizes defendant's wish to be reunited with his family, separation from one's family is an unfortunate result of incarceration. Similarly, while the Court recognizes defendant's efforts to improve himself, the Court does not find his efforts so extraordinary as to outweigh the other sentencing factors. And again, while the Court also recognizes the amount of support defendant has received from friends and family, that support does not outweigh the other relevant sentencing factors.

The Court is also cognizant of defendant's arguments regarding the alleged failure of the Bureau of Prisons to provide him with adequate medical care and regarding current prison conditions. To the extent that defendant argues that the Bureau of Prisons is violating his civil rights by failing to protect adequate medical treatment and adequate living conditions, the Court finds that such claims should be addressed through 42 U.S.C. § 1983 or another appropriate civil remedy, not through a motion for compassionate release. *See, i.e. United States v. Pooler*, No. 3:18-cr-00137, 2020 U.S. Dist. LEXIS 224934, 2020 WL 7046964 (S.D. Ohio Dec. 1, 2020) ("to the extent that Pooler is arguing that his Motion should be granted due to the Eighth Amendment's prohibition on the

9

infliction of cruel and unusual punishments. . . a compassionate release motion likewise is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations," collecting cases).

After considering the above, and all other evidence of record, the Court finds that the § 3553(a) factors weigh against compassionate release. In reaching this decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole. While the Court notes defendant's medical condition, that is only part of the compassionate release calculus. On the record before the Court, the sentencing factors weigh against early release, and defendant's motions for compassionate release will be **DENIED**.

### IV. Conclusion

For the reasons set forth more fully above, defendant's motions for compassionate release [Docs. 640, 667] are **DENIED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE